**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION**

GREGORY HACKMAN d/b/a GREGORY )
HACKMAN REALTORS, and GREGORY )
HACKMAN REALTORS, INC., an Illinois )
corporation, )
  )
         Plaintiffs, )
  )
  )
   vs. )
  )
DICKERSON REALTORS, INC., an Illinois )
corporation d/b/a DICKERSON-NEIMAN )
REALTORS, WHITEHEAD, INC., an Illinois )
corporation, d/b/a WHITEHEAD REALTORS, )
PREMIER REAL ESTATE BROKERAGE )
SERVICES, INC., an Illinois corporation, d/b/a )
COLDWELL BANKER PREMIER, CENTURY )
21 COUNTRY NORTH, INC., an Illinois )
corporation, d/b/a CENTURY 21 COUNTRY )
NORTH, R.CROSBY, INCORPORATED, an )
Illinois corporation, d/b/a PRUDENTIAL CROSBY )
REALTORS, McKISKI-LEWIS, INC., an Illinois )
corporation, d/b/a TOM McKISKI REALTORS, )
LORI REAVIS, RAY YOUNG, )
MICHAEL DUNN, DONNA SHIPLER n/k/a )
DONNA KITZMAN, MELISSA SMITH, )
JESSICA LICARY, DIANE PARVIN, )
ROCKFORD ASSOCIATION OF REALTORS, )
and ILLINOIS ASSOCIATION OF REALTORS, )
  )
         Defendants. )

06 C 50 240

**FILED**

NOV 3 0 2006

MICHAEL W. DOBBINS, CLERK
UNITED STATES DISTRICT COURT

## VERIFIED COMPLAINT AT LAW AND EQUITY

NOW COME the Plaintiffs, GREGORY HACKMAN d/b/a GREGORY HACKMAN

REALTORS, and GREGORY HACKMAN REALTORS, INC., an Illinois corporation and

complaining of the Defendants, DICKERSON REALTORS, INC., an Illinois corporation d/b/a

DICKERSON-NEIMAN REALTORS, WHITEHEAD, INC., an Illinois corporation, d/b/a

WHITEHEAD REALTORS, PREMIER REAL ESTATE BROKERAGE SERVICES, INC., an

Illinois corporation, d/b/a COLDWELL BANKER PREMIER, CENTURY 21 COUNTRY NORTH, INC., an Illinois corporation, d/b/a CENTURY 21 COUNTRY NORTH, R.CROSBY, INCORPORATED, an Illinois corporation, d/b/a PRUDENTIAL CROSBY REALTORS, McKISKI-LEWIS, INC., an Illinois corporation, d/b/a TOM McKISKI REALTORS, LORI REAVIS, RAY YOUNG, MICHAEL DUNN, DONNA SHIPLER n/k/a DONNA KITZMAN, MELISSA SMITH, JESSICA LICARY, DIANE PARVIN, ROCKFORD ASSOCIATION OF REALTORS, and ILLINOIS ASSOCIATION OF REALTORS, states and alleges as follows:

## PRELIMINARY STATEMENT

1.  This is an action for compensatory, punitive and injunctive relief arising from illegal efforts to control the real estate broker commission scheme in the Rockford area by (1.) attempting to intimidate Plaintiffs into "charging "a certain commission rate for his real estate listings, which was higher than what Plaintiff was then-charging; (2.) refusing to deal with Plaintiffs in retaliation for Plaintiffs' decision not to charge a certain rate, by refusing to show properties to Plaintiffs' clients, and in refusing to offer Plaintiff the advertised Multiple Listing Service commission rate; (3.) initiating trumped-up ethics complaints against Plaintiff, in an effort to tarnish his record and reputation; (4.) adversely affecting Plaintiffs' relationships with its clients by interference and by false statements about Plaintiffs to its agents and clients.

## JURISDICTION

2.  This Court has original jurisdiction over this matter pursuant to 28 U.S.C. 1331, which gives the United States District Courts original jurisdiction of all matters arising under the laws under the United States. This is a matter brought pursuant to Section 2 of the Sherman Act (15 U.S.C. 1, *et seq.*).

3.     This Court also has ancillary jurisdiction over the remaining Illinois state claims in this Complaint, pursuant to 28 U.S.C. 1367(a), for the other claims are so related to the federal question claims that they form part of the same case or controversy under Article III of the United States Constitution. This Court additionally has ancillary jurisdiction over the declaratory judgment actions pursuant to 28 U.S.C. 2201-02 (Federal Declaratory Judgment Act).

## VENUE

4.     Venue is proper in this Court under 28 U.S.C. 1391(b)(1) and (2), for almost all Defendants (except for the Illinois Association of Realtors) reside in this District, and a substantial part of the acts and/or omissions that are the subject of this suit occurred in this District. Additionally, this Court is the proper venue for this matter under 15 U.S.C. 15(a).

## PARTIES

5.     Gregory Hackman is a natural person, who has been in the real estate business for 25 years. From 1991 - late 2005, was the sole proprietor of GREGORY HACKMAN REALTORS. Since late 2005, he has been the president and owner of GREGORY HACKMAN REALTORS, INC., an Illinois corporation d/b/a GREGORY HACKMAN REALTORS (hereinafter collectively referred to as "HACKMAN").

6.     DICKERSON REALTORS, INC., an Illinois corporation, d/b/a DICKERSON-NEIMAN REALTORS (hereinafter "DICKERSON"), is a corporation operating under the laws of the State of Illinois, has offices throughout northwest Illinois, and is in the business of representing clients in their sales and purchases of real estate. In the relevant area, DICKERSON is one of the largest residential realtors, listing approximately fifty percent of the

properties on the market at any one time. DICKERSON is one of the Defendants sometimes herein as "the agency Defendants."

7. WHITEHEAD, INC., an Illinois corporation, d/b/a WHITEHEAD REALTORS (hereinafter "WHITEHEAD"), is a corporation operating under the laws of the State of Illinois, has offices throughout northwest Illinois, and is in the business of representing clients in their sales and purchases of real estate. WHITEHEAD is also considered a large realtor in the Rockford area. WHITEHEAD is one of the Defendants sometimes herein as "the agency Defendants."

8. PREMIER REAL ESTATE BROKERAGE SERVICES, INC., an Illinois corporation, d/b/a COLDWELL BANKER PREMIER (hereinafter "COLDWELL"), is a corporation operating under the laws of the State of Illinois, and is in the business of representing clients in their sales and purchases of real estate. COLDWELL is one of the Defendants sometimes herein as "the agency Defendants."

9. CENTURY 21 COUNTRY NORTH, INC., an Illinois corporation, d/b/a CENTURY 21 COUNTRY NORTH (hereinafter "CENTURY 21"), is a corporation operating under the laws of the State of Illinois, and is in the business of representing clients in their sales and purchases of real estate. CENTURY 21 is also considered a large realtor in the Rockford area. CENTURY 21 is one of the Defendants sometimes herein as "the agency Defendants."

10. R. CROSBY, INCORPORATED, an Illinois corporation, d/b/a PRUDENTIAL CROSBY REALTORS (hereinafter "PRUDENTIAL"), is a corporation operating under the laws of the State of Illinois, and is in the business of representing clients in their sales and purchases of real estate. PRUDENTIAL is one of the Defendants sometimes herein as "the agency Defendants."

4

11.    McKISKI-LEWIS, INC., an Illinois corporation, d/b/a TOM McKISKI

REALTORS, is a corporation operating under the laws of the State of Illinois, and is in the

business of representing clients in their sales and purchases of real estate.  McKISKI is one of the

Defendants sometimes herein as "the agency Defendants."

12.    LORI REAVIS is a natural person residing in the city of Rockford, County of

Winnebago, State of Illinois.  At all relevant times, REAVIS was a licensed real estate agent in

the State of Illinois, and was employed by, and/or acting as an agent of, DICKERSON-

NEIMAN.

13.    RAY YOUNG is a natural person residing in the city of Roscoe, County of

Winnebago, State of Illinois.  At all relevant times, YOUNG was a licensed real estate agent in

the State of Illinois, and was employed by, and/or acting as an agent of, DICKERSON-

NEIMAN.

14.    MICHAEL DUNN, is a natural person residing in the city of Rockford, County of

Winnebago, State of Illinois.  At all relevant times, DUNN was a licensed real estate agent in the

State of Illinois, and was employed by DICKERSON-NEIMAN as the General Manager of its

Rockford office.

15.    DONNA SHIPLER n/k/a DONNA KITZMAN is a natural person residing in the

City of South Beloit, County of Ogle, State of Illinois.  At all relevant times, SHIPLER was a

licensed real estate agent in the State of Illinois, and was employed by, and/or acting as an agent

of, COLDWELL.

16.    MELISSA SMITH is a natural person residing in the City of Poplar Grove,

County of Boone, State of Illinois.  At all relevant times, SMITH was a licensed real estate agent

in the State of Illinois, and was employed by, and/or acting as an agent of, DICKERSON.

17.     JESSICA LICARY is a natural person residing in the State of Illinois. At all relevant times, LICARY was employed by, and/or acting as an agent of, PRUDENTIAL.

18.     DIANE PARVIN is a natural person residing in the City of Rockford, County of Winnebago, State of Illinois. At all relevant times, PARVIN was a licensed real estate agent in the State of Illinois, and was employed by, and/or acting as an agent of, CENTURY 21.

19.     ROCKFORD ASSOCIATION OF REALTORS (RAAR) is an organization, headquartered in the City of Rockford, County of Winnebago, State of Illinois, which provides and promotes programs, products and services to enhance licensed Realtors' ability to conduct their individual businesses successfully. RAAR takes collective action to promote extension and preservation of the right to own, transfer and use real property. RAAR also engages in education and strict enforcement of the code of ethics in order to enhance the professionalism and image of the licensed Realtor for the benefit of the community. Also, RAAR serves as a governing body to enforce the regulations in the code of ethics promulgated by the National Association of Realtors, and serves to resolve disputes between licensed Realtors over alleged violations of the NAR regulations. At all relevant times, agents of DICKERSON held a majority of the positions on the Board of Directors, and other influential positions, within RAAR.

20.     ILLINOIS ASSOCIATION OF REALTORS (IAR) is an organization, headquartered in the City of Springfield, County of Springfield, State of Illinois. The objectives of the Association are (in relevant part, according to its website): to establish and maintain high standards of ethical conduct among its members and those affiliated with them by requiring compliance with the [National Association of Realtors's] Code of Ethics and Code of Equal Opportunity . . . ." Also, IAR serves as a governing body to enforce the regulations in the code of ethics promulgated by the National Association of Realtors, and serves to resolve disputes

between licensed Realtors over alleged violations of the NAR regulations. IAR also, in proper

circumstances, accepts the transfer of local disputes and disciplinary actions for hearings when

circumstances are appropriate that the local Association is not suited to hear and decide the

dispute or disciplinary action, including after all reasonable efforts to empanel an impartial panel

at the local level have failed.

## FACTUAL BACKGROUND

21.     The dispute between HACKMAN and the Defendants, who are all members of

the Multiple Listing Service, began in approximately 2000. HACKMAN had just opened a

Belvidere, Illinois office, to better service the Rockford area. To attract clients, HACKMAN

advertised that it would charge a 5% brokerage fee/commission for new clients that retained

HACKMAN to list and sell their pre-existing construction.

22.     The "going rate" for commissions for being the listing agent for a pre-existing

property in the Rockford area is 6-7%. This 6-7% commission was at all relevant times charged

by all the agency Defendants to sell properties for sellers. Accordingly, sellers would save 1-2%

of the total commission they would have to pay otherwise if they listed with one of the agency

Defendants.

23.     When a property is purchased by a buyer represented by a realty agent, under the

MLS Rules (basically governed by Section 5), the selling agent agrees to share the commission

equally with the buyer's agent. This sharing is referred to in the industry as "the MLS split."

Accordingly, if the selling broker gets 7% commission on the sale of a property, the buyer's

agent would get 3½% and the broker/seller's/listing agent would receive 3½ %.

24.     When HACKMAN reduced his commission rate to 5%, this affected the other

brokers in the Rockford area in not only "losing" potential listings as seller's agents, but when

acting as buyer's agents under the MLS split guidelines, the purchaser's agent would only receive 2½%.

25.     In response to this new competitive threat, the Defendants DICKERSON, WHITEHEAD, CENTURY 21, PRUDENTIAL, COLDWELL and McKISKI, with the encouragement of RAAR, entered into an agreement whereby they would, by and through their agents and/or employees, retaliate against HACKMAN in every facet of his business. The agency Defendants, by and through their agents and/or employees, refused, and continue to refuse, to present offers on their own listings from potential purchasers represented by HACKMAN.  Defendants further discouraged their seller clients from accepting offers from HACKMAN's purchaser clients, by disparaging HACKMAN.

26.     For example, on November 21, 2003, McKISKI stated it would not allow HACKMAN to show McKISKI's listings, without going through Larry Petry first, who never returned HACKMAN's phone calls, with the result that HACKMAN was not able to set up showings of McKISKI properties.  The alleged basis was a dispute over a client.  The true basis was the commission rate.

27.     Further, on March 6, 2004, DUNN of DICKERSON ordered all DICKERSON offices (except one he could not reach) that HACKMAN agents were boycotted from setting up showings of any DICKERSON-listed properties.  On March 8, 2004, HACKMAN made telephone calls to five DICKERSON offices to set up showings for HACKMAN's clients.  The six people to whom HACKMAN spoke all refused to set up showings for HACKMAN.  HACKMAN was told by receptionists at all but one DICKERSON office in town that DUNN gave orders that none of HACKMAN's realtors, or Greg Hackman himself, could show a DICKERSON listed property.

28.     Because they would have had to pay a 3.5% commission to any buyer's agent, this boycott did not benefit the agency and individual Defendants financially, and it harmed the consumers who were refused access to a large segment of the housing market because they were not permitted to see or place offers on properties listed by the agency Defendants.

29.     In addition, the Defendants DICKERSON, WHITEHEAD, CENTURY 21 and COLDWELL have engaged in a sustained and coordinated process of defaming HACKMAN to its clients, trying to convince the clients (both prospective buyers and sellers) to cancel their contracts with HACKMAN and sign with them.

30.     Further, the Defendants COLDWELL and DICKERSON then filed false ethics complaints against HACKMAN and its agents to RAAR, which passed them on to IAR.

31.     On July 26, 2004, DUNN had Gregory Hackman into his office, where he told Hackman what the going commission rates were for new-construction (5%) and pre-existing residential home sales (6-7%). DUNN said DICKERSON could not compete with the rates HACKMAN was charging, and DUNN "suggested" HACKMAN discontinue its advertised special and raise its commission rates to match everybody else's. HACKMAN did not respond to this issue, believing it violated antitrust laws to make such an agreement. DUNN also made sure Hackman understood DICKERSON would file ethics complaints against HACKMAN if HACKMAN did not cooperate.

32.     Despite these threats and other efforts, HACKMAN did not discontinue his "discounted" commission rate.

33.     Since that date, the aforementioned group boycott has continued, in that the Defendants DICKERSON, WHITEHEAD, CENTURY 21, PRUDENTIAL, COLDWELL and McKISKI, entered into an agreement whereby they would, by and through their agents and/or

9

employees, continue to retaliate against HACKMAN by (1.) refusing to present offers on their own listings from potential purchasers represented by HACKMAN; and/or (2.) discouraging their seller clients from accepting offers from HACKMAN's purchaser clients, by disparaging HACKMAN.

34.     Also since that time, the Defendants DICKERSON, WHITEHEAD, CENTURY 21 and COLDWELL have engaged in a sustained and coordinated process of defaming HACKMAN to its clients, trying to get the HACKMAN clients (both prospective buyers and sellers) to cancel their contracts with HACKMAN and sign with the Defendants as buyer or seller agent. These Defendants, including McKISKI, have also defamed HACKMAN to its agents, and to other third-parties.

35.     In late 2004, HACKMAN was prepared to purchase a building in Roscoe, Illinois, in order to expand its operations. Due to the actions of the Defendants, HACKMAN was financially forced to abandon those plans, and six of its agents left HACKMAN, with some leaving the business altogether.

36.     Currently, HACKMAN runs its operations out of Gregory Hackman's home office, because the Defendants have effectively run HACKMAN out of everywhere else it has tried to set up. As a proximate result of the Defendants' actions as described herein, HACKMAN has lost considerable sums in lost sales commissions, and had its reputation smeared and tarnished throughout the Rockford area. This has been devastating to HACKMAN's past business and future prospects, as a realtor's reputation is a key ingredient to its success.

## COUNT I – SHERMAN ACT VIOLATIONS (15 U.S.C. 1 & 2) AGAINST DICKERSON, WHITEHEAD, CENTURY 21, COLDWELL, PRUDENTIAL , McKISKI and RAAR

37.    HACKMAN incorporates and realleges Paragraphs 1 through 36, above, as if fully restated herein.

38.    The providing of real estate brokerage services is a relevant product within the meaning of the Act herein cited.

39.    The relevant geographic market is the Rockford area, which includes all the cities in Winnebago County, and the surrounding counties, where HACKMAN and the Defendants provide real estate brokerage services.

40.    The Defendants are among the largest realtors in the Rockford area, if not the largest, with a large percentage of the total market share.

41.    Substantial barriers exist for HACKMAN, and any other small realtor the Defendants decide to boycott, in the relevant market.

42.    The Defendants have the power, through their market share and influence within the RAAR, to control commission rates charged to consumers and to exclude any realtor who attempts to charge a consumer less of a commission.

43.    DICKERSON, WHITEHEAD, COLDWELL, CENTURY 21, PRUDENTIAL and McKISKI, with the encouragement of RAAR, have engaged in unfair anticompetitive behavior by agreeing to boycott HACKMAN, by refusing to offer the same commission as all other MLS members, and refusing to allow HACKMAN to show properties listed by the Defendants.

44.    In addition, the agency Defendants engaged in other forms of a horizontal boycott and unreasonable and unfair anti-competitive measures, by making derogatory statements about

11

HACKMAN to other realtors and clients, and bringing false ethics complaints when HACKMAN asserts its rights with regards to a client.

45.     These actions violate Sections 1 and 2 of the Sherman Act (15 U.S.C. 1 & 2), in that they intentionally constitute an illegal conspiracy to conduct a group boycott of HACKMAN by the holders of a large share of the Rockford area real estate market. The purpose was not to reduce costs or increase performance, nor was there any legitimate business justification for these actions. The boycott and other actions were solely anti-competitive measures to force HACKMAN, a small realtor charging less commission to consumers, out of the market.

46.     As a proximate result of the Defendants' actions, HACKMAN has been damaged, in the loss of current and potential clients, including but not limited to those listed above, the loss of sales and commissions, and in reputation. In addition, as a result of these Defendants' actions, the real estate market in the Rockford area has suffered from artificially high commission charges.

47.     In late 2004, HACKMAN was prepared to purchase a building in Roscoe, Illinois, in order to expand its operations. Due to the actions of these Defendants, HACKMAN was financially forced to abandon those plans, and six of its agents left HACKMAN, with some leaving the business altogether.

48.     Currently, HACKMAN runs its operations out of Gregory Hackman's home office, because the Defendants have effectively run HACKMAN out of everywhere else it has tried to set up.

49.     As a proximate result of the Defendants' actions as described above, HACKMAN has lost considerable sums in lost sales commissions, and had its reputation smeared and

tarnished throughout the Rockford area. This has been devastating to HACKMAN's past business and future prospects, as a realtor's reputation is a key ingredient to its success.

50. As a proximate result of the Defendants' actions, HACKMAN has been damaged in an amount to exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00).

WHEREFORE, the Plaintiffs, GREGORY HACKMAN d/b/a GREGORY HACKMAN REALTORS, and GREGORY HACKMAN REALTORS, INC., an Illinois corporation, request this Honorable Court to enter judgment in their favor and against the Defendants, DICKERSON REALTORS, INC., an Illinois corporation d/b/a DICKERSON-NEIMAN REALTORS, and WHITEHEAD, INC., an Illinois corporation, d/b/a WHITEHEAD REALTORS, PREMIER REAL ESTATE BROKERAGE SERVICES, INC., an Illinois corporation, d/b/a COLDWELL BANKER PREMIER, CENTURY 21 COUNTRY NORTH, INC., an Illinois corporation, d/b/a CENTURY 21 COUNTRY NORTH, R.CROSBY, INCORPORATED, an Illinois corporation, d/b/a PRUDENTIAL CROSBY REALTORS, McKISKI-LEWIS, INC., an Illinois corporation, d/b/a TOM McKISKI REALTORS, and ROCKFORD AREA ASSOCIATION OF REALTORS, for an amount to exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), plus all statutory damages allowed under the Sherman Act (per 15 U.S.C. 15), including reasonable attorney's fees, a recoupment of all costs expended in prosecuting this suit, and any and all further relief as this court deems just and proper.

## COUNT II – VIOLATIONS OF ILLINOIS ANTITRUST ACT AGAINST DICKERSON, WHITEHEAD, COLDWELL, CENTURY 21, PRUDENTIAL, McKISKI and RAAR

51. HACKMAN incorporates and realleges Paragraphs 1 through 36, above, as if fully restated herein.

52. HACKMAN incorporates and realleges Paragraphs 38 through 44 of Count I, above, as if fully restated herein.

53. DICKERSON, WHITEHEAD, CENTURY 21, COLDWELL, PRUDENTIAL, and McKISKI, with the encouragement of RAAR, engaged in unfair anticompetitive behavior by agreeing to boycott HACKMAN, by refusing to offer the same commission as all other MLS members, refusal to allow HACKMAN to show properties listed by the Defendants, and/or refusal to show their clients properties listed by HACKMAN.

54. In addition, the agency Defendants engaged in other forms of a horizontal boycott, by making derogatory statements about HACKMAN to other realtors and clients, and bringing false ethics complaints when HACKMAN asserts its rights with regards to a client.

55. The conduct of DICKERSON violates Section 3(1)(a) the Illinois Antitrust Act (740 ILCS 10/1, *et seq.*) (hereinafter "the IL Act"), by virtue of boycotting HACKMAN for refusing to charge the "going rate" for commissions for the sale/purchase of residential real property.

56. The conduct of DICKERSON and WHITEHEAD, namely the agreement to boycott HACKMAN, by refusing to offer the same commission as all other MLS members, and/or refusing to allow HACKMAN to show properties listed by the Defendants, violates Section 3(2) of the IL Act for being a conspiracy to unreasonably restrain trade and commerce.

57. Said conduct of DICKERSON, WHITEHEAD, COLDWELL, CENTURY 21, PRUDENTIAL and McKISKI also violates Section 3(3) of the IL Act because their actions constitute attempts to create a monopoly on the Rockford area real estate market for the purposes of excluding competition.

58. These actions not only severely damage HACKMAN, but also damage the entire real estate market in the Rockford, Illinois area.

59. As a proximate result of these Defendants' actions, HACKMAN has been damaged as well as the real estate market in the Rockford area, in the loss of clients, including but not limited to those listed above, the loss of sales and commissions, and in reputation.

60. As a proximate result of the Defendants' actions, HACKMAN has been damaged in an amount to exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00).

WHEREFORE, the Plaintiffs, GREGORY HACKMAN d/b/a GREGORY HACKMAN REALTORS, and GREGORY HACKMAN REALTORS, INC., an Illinois corporation, requests this Honorable Court to enter judgment against the Defendants, DICKERSON REALTORS, INC., an Illinois corporation d/b/a DICKERSON-NEIMAN REALTORS, and WHITEHEAD, INC., an Illinois corporation, d/b/a WHITEHEAD REALTORS, PREMIER REAL ESTATE BROKERAGE SERVICES, INC., an Illinois corporation, d/b/a COLDWELL BANKER PREMIER, CENTURY 21 COUNTRY NORTH, INC., an Illinois corporation, d/b/a CENTURY 21 COUNTRY NORTH, R.CROSBY, INCORPORATED, an Illinois corporation, d/b/a PRUDENTIAL CROSBY REALTORS, McKISKI-LEWIS, INC., an Illinois corporation, d/b/a TOM McKISKI REALTORS, and the ROCKFORD AREA ASSOCIATION OF REALTORS, for an amount to exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), plus all statutory damages allowed under the Illinois Antitrust Act, including reasonable attorney's fees, a recoupment of all costs expended in prosecuting this suit, and any and all further relief as this court deems just and proper.

## COUNT III – TEMPORARY INJUNCTION AGAINST RAAR AND IAR

61. HACKMAN incorporates and realleges Paragraphs 1 through 36, above, as if fully restated herein.

62.     On August 30, 2004, REAVIS filed an ethics complaint against Gregory
Hackman. The alleged matter arose from the property commonly known as 335 Perry Avenue,
South Beloit, Illinois. REAVIS alleged Hackman committed thirty ethics violations arising from
this one property.

63.     Ethics complaints within the RAAR are governed by the Code of Ethics and
Arbitration Manual, a publication of the National Association of Realtors ("Manual").

64.     RAAR failed to follow its own procedures stated in the Manual, and therefore
have improperly ceded jurisdiction of this matter, and improperly failed to dismiss this matter,
for the following reasons:

      a.  Failure of the RAAR Grievance Committee to properly review REAVIS's
Complaint and see that the alleged violations fall outside the 180 day
limitation period for filing an Ethics Complaint, per Part 4, Section 20(a) of
the Manual, from when REAVIS could have known, in the exercise of
reasonable diligence, of the facts giving rise to the alleged violations;

      b.  Failure to exhaust all reasonable efforts to impanel an impartial panel among
the qualified RAAR membership, per Paragraph 18 of the "Statements of
Professional Standards Policy Applicable to Ethics Proceedings" in the
Manual;

      c.  Improperly ceding jurisdiction of this matter to IAR despite failing to comply
with the above-referenced Paragraph 18;

      d.  Improperly failing to dismiss this matter on two occasions, and instead
improperly imposing continuances, when there were no written requests for

16

postponement, there is no evidence the Chair of the panel gave permission for either continuance, per Part 5, pp.73-74 of the Manual.

65.     Though IAR originally remanded the matter back to RAAR on February 24, 2006, noting that it had no RAAR resolution or action that forwarded the matter to IAR, it improperly assumed jurisdiction of this matter on August 1, 2006, despite the same failure, as well as the other above-described failures of RAAR to follow its procedures per the Manual.

66.     In addition to the above, Hackman agreed on five potential panel members, from who a panel of three was to be chosen.  RAAR had the obligation to empanel a panel and notify HACKMAN of the selected panel, from HACKMAN's unchallenged list, within a certain amount of time after receiving HACKMAN's list of acceptable potential panelists.  On two occasions, RAAR failed to comply with this obligation.  Therefore, there was no reason for RAAR to cede jurisdiction, nor for IAR to take it.

67.     IAR has scheduled an ethics hearing for December 5, 2006, despite also failing to timely notify HACKMAN of the selected panel.

68.     HACKMAN has a clearly ascertainable right to be protected, in that his unblemished record within the RAAR is threatened, he faces potential administrative and financial penalties, all to his, and the office's, detriment.

69.     HACKMAN has no remedy at law, because IAR has not only expressed its intent to take jurisdiction of the proceeding, but also to actually conduct the proceeding, all to HACKMAN's detriment.

70.     HACKMAN will be irreparably harmed if he is forced to proceed with an improper ethics hearing conducted against him, due to the potential sanctions involved, and the unfair damage to his reputation.

71.     The parties can be restored to *status quo*, by entering an injunction preventing the ethics hearing from proceeding until the Court has the opportunity to consider a permanent injunction.

72.     HACKMAN has a likelihood of succeeding on the merits in his request for a temporary injunction, given the evidence that neither RAAR nor IAR has jurisdiction of this matter, that the deadline for filing has passed when the complaint was filed, and that neither RAAR nor IAR followed its own procedures and rules regarding this matter.

WHEREFORE, the Plaintiffs, GREGORY HACKMAN d/b/a GREGORY HACKMAN REALTORS, and GREGORY HACKMAN REALTORS, INC., an Illinois corporation, request this Honorable Court to enter a temporary injunction against the ROCKFORD AREA ASSOCIATION OF REALTORS and the ILLINOIS ASSOCIATION OF REALTORS, enjoining them from conducting the ethics hearing scheduled on December 5, 2006, until such time as the Court can conduct a full hearing on the merits. HACKMAN also requests any and all further relief as this Court deems appropriate.

## COUNT IV – DECLARATION OF RIGHTS, AND PERMANENT INJUNCTION AGAINST RAAR AND IAR

73.     HACKMAN incorporates and realleges Paragraphs 1 through 36, above, as if fully restated herein.

74.     HACKMAN incorporates and realleges Paragraphs 62 through 70 of Count III as if fully restated herein.

75.     In addition to seeking (1.) a declaration that RAAR and IAR violated their respective procedures with regards to ethics investigations and hearings, and that the ethics matter should be dismissed, and (2.) an injunction against RAAR and IAR from proceeding with the ethics hearing, HACKMAN seeks the return, from DICKERSON, of $3500.00 awarded

18

against HACKMAN in an arbitration relating to the same matter. IAR conducted the arbitration, after which its representatives admitted IAR did not have jurisdiction over the matter. By then, HACKMAN had already paid the $3500.00, but it has not been returned.

WHEREFORE, the Plaintiffs, GREGORY HACKMAN d/b/a GREGORY HACKMAN REALTORS, and GREGORY HACKMAN REALTORS, INC., an Illinois corporation, request this Honorable Court to (1.) enter a declaratory judgment in HACKMAN's favor that the ROCKFORD AREA ASSOCIATION OF REALTORS and the ILLINOIS ASSOCIATION OF REALTORS violate their procedures for investigating and conducting ethics hearings and that said ethics complaint should be dismissed, (2.) enter an injunction permanently enjoining RAAR and IAR from conducting the ethics hearing currently scheduled on December 5, 2006. HACKMAN also seeks a return of the $3500.00 awarded to DICKERSON in the void and invalid Arbitration. HACKMAN also requests any and all further relief as this Court deems appropriate.

## COUNT V – DEFAMATION AGAINST DICKERSON, REAVIS, YOUNG, PRUDENTIAL, LICARY, WHITEHEAD, COLDWELL, CENTURY 21 and McKISKI

76. HACKMAN incorporates and realleges Paragraphs 1 through 36, above, as if fully restated herein.

77. On January 20, 2005, HACKMAN entered into a Listing Contract with Jeffrey and Kathleen Reimer, for the property commonly known as 10111 Joy Court in Roscoe. REAVIS had also tried to get the Reimers to sign up. Two days before the Listing Contract expired, the sellers refused to allow HACKMAN to set up a second showing for the agent of a potential buyer, saying HACKMAN would have to talk to REAVIS of DICKERSON. Due to slanderous and derogatory statements about HACKMAN's business integrity made by REAVIS,

HACKMAN was denied the second showing, and lost the listing after it expired. Instead, the Reimers signed with REAVIS, who violated NAR rules in contacting the Reimers.

78.     On May 10, 2005, HACKMAN signed a Listing Contract with Phyllis Ripko, to sell her property at 2629 Hanson Street in Rockford. The Contract was valid until February 10, 2006, cancelable at anytime. On May 27, 2005, Jon Gates of PRUDENTIAL presented HACKMAN with an offer to purchase the property for $56,900.00. Gates presented the offer on behalf of Turned Around Properties, which was owned by Joseph Gates, the father of Jon Gates. Due to the illegibility of the original offer due to changes and facsimiles, a second offer for the same amount was presented on June 2, 2005, and the Sales Contract was signed by both parties. When an expected request for extension was not received by HACKMAN, and a call was placed to Gates about it, HACKMAN learned PRUDENTIAL, by and through LICARY, had told Gates, who related the information to his father/client, that HACKMAN was dishonest and not to go through with the deal. HACKMAN lost the sale and the client due to the slander.

79.     In March 2006, HACKMAN attempted to re-list the property commonly known as 7371 Countryshire. The sellers refused to re-list with HACKMAN, citing derogatory statements made to them by certain agents of DICKERSON.

80.     In addition, at all relevant times, and continuing through the present, agents and/or employees from DICKERSON, WHITEHEAD, COLDWELL, CENTURY 21, PRUDENTIAL and McKISKI have made derogatory and defamatory statements about HACKMAN, regarding HACKMAN's personal and business integrity, to HACKMAN's clients, agents and other third parties.

81.     As a proximate result of the false and derogatory statements by DICKERSON's agents and/or employees, namely REAVIS, PRUDENTIAL by and through LICARY,

20

WHITEHEAD, COLDWELL, CENTURY 21 and McKISKI, which statements constitute slander *per se*, HACKMAN lost producing agents, as well as clients and commissions, and has been damages in an amount to exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00).

WHEREFORE, the Plaintiffs, GREGORY HACKMAN d/b/a GREGORY HACKMAN REALTORS, and GREGORY HACKMAN REALTORS, INC., an Illinois corporation, request this honorable court enter judgment in their favor and against the Defendants, DICKERSON REALTORS, INC., an Illinois corporation d/b/a DICKERSON-NEIMAN REALTORS, R. CROSBY, INCORPORATED, an Illinois corporation, d/b/a PRUDENTIAL CROSBY REALTORS, LORI REAVIS and JESSICA LICARY, WHITEHEAD, INC., an Illinois corporation, d/b/a WHITEHEAD REALTORS, PREMIER REAL ESTATE BROKERAGE SERVICES, INC., an Illinois corporation, d/b/a COLDWELL BANKER PREMIER, CENTURY 21 COUNTRY NORTH, INC., an Illinois corporation, d/b/a CENTURY 21 COUNTRY NORTH, and McKISKI-LEWIS, INC., an Illinois corporation, d/b/a TOM McKISKI REALTORS, in an amount to exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00), plus a recoupment of all costs expended in prosecuting this action, and any and all further relief as this court deems appropriate, including punitive damages.

### COUNT VI - TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY AGAINST DICKERSON, DUNN, REAVIS, SMITH, YOUNG, WHITEHEAD, COLDWELL, SHIPLER, PRUDENTIAL, LICARY, CENTURY 21, PARVIN AND McKISKI

82.     HACKMAN incorporates and realleges Paragraphs 1 through 36 above, as if fully restated herein.

83.    In April, 2002, Vickie Stearns, a former HACKMAN agent, lost a client when derogatory statements about HACKMAN's business integrity and honesty were made by agents of DICKERSON to said client in DICKERSON's main office area.

84.    In October, 2003, one of HACKMAN's realtors, Syvaly Sengsouvanh, quit after Melissa Smith of DICKERSON boycotted HACKMAN, and refused to set up a showing with said former HACKMAN realtor.

85.    In or about January, 2003, a HACKMAN agent, Donna Wingert, had a false ethics complaint filed against her by SHIPLER of COLDWELL, whose motivation was to coerce Wingert to release her seller clients, Charlene and David Stowe. RAAR improperly turned the ethics matter over to IAR, who dropped it. Wingert eventually quit HACKMAN's employ, due to the treatment of HACKMAN by the Defendants.

86.    On September 19, 2003, HACKMAN entered into an employment agreement with Jeff DeWitt. Shortly thereafter, DeWitt wrote a buyer's contract for a DICKERSON listed property. DeWitt went to DICKERSON to present the offer and was called into the office of Mary Ginger Westin, who said "you seem to be a smart guy, why are you working for HACKMAN?" She then said other false and derogatory statements regarding HACKMAN's business integrity and acumen.

87.    A few days later, REAVIS of DICKERSON stole a client, Greg Willis, from DeWitt. When a commission dispute arose over this between HACKMAN and DICKERSON, REAVIS had the Willises write an ethics complaint against HACKMAN. That matter is still pending, and is the subject of Counts III and IV of this suit.

88. DeWitt eventually quit HACKMAN as a result of the above-described actions, costing HACKMAN the funds expended to educate DeWitt, as well as the commissions DeWitt would have reasonably brought to HACKMAN.

89. In May, 2004, YOUNG made false and derogatory statements to one of HACKMAN's clients, Don Sandell, falsely impugning HACKMAN's business integrity and honesty. The client left HACKMAN and signed with YOUNG, who received a commission from a client he should never have had in the first place.

90. HACKMAN incorporates and realleges Paragraphs 79 through 82 of Count V, as if fully restated herein.

91. On August 10, 2006, PARVIN, an agent of CENTURY 21, misrepresented the status of a property (saying it was unavailable) in order to prevent HACKMAN from presenting an offer. The MLS computer system did not reflect that the property was unavailable. The sellers previously confirmed availability of the property with HACKMAN's clients directly. PARVIN's actions violated MLS rules, and, although HACKMAN was eventually able to present the offer, PARVIN's actions resulted in HACKMAN's clients not making the purchase.

92. HACKMAN had valid business relationships, and the expectancy of the completion of those relationships, with its clients as described above, by virtue of the respective Exclusive Listing Agreements.

93. The Defendants, individually or by and through their employees and/or agents, and as individuals, knew HACKMAN had said business relationships with the above-referenced clients.

94. HACKMAN had valid business relationships, and the expectancy of the completion of those relationships, with its agents as described above.

95.     The Defendants, individually or by and through their employees and/or agents, and as individuals, knew HACKMAN had said business relationships with the above-referenced agents.

96.     The Defendants, individually or by and through their agents and/or employees, and as individuals, intentionally interfered with said business relationships by ingratiating themselves with said clients, and making derogatory statements about HACKMAN until the client left HACKMAN and went to the Defendants' offices.

97.     The Defendants, individually or by and through their agents and/or employees, and as individuals, also intentionally interfered with said business relationships by making derogatory statements about HACKMAN to its agents, and refusing to do business with these agents so long as they continued to work for HACKMAN, until the agents quit HACKMAN's employ.

98.     As a proximate result of the intentional interference with said client and agents relationships, HACKMAN lost commissions and other income.

99.     As a proximate result of the Defendant's intentional interference with HACKMAN's economic relationships with its clients and agents, HACKMAN has been damaged in an amount to exceed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00).

WHEREFORE, the Plaintiffs, GREGORY HACKMAN d/b/a GREGORY HACKMAN REALTORS, and GREGORY HACKMAN REALTORS, INC., request judgment in their favor and against the Defendants, DICKERSON REALTORS, INC., an Illinois corporation d/b/a DICKERSON-NEIMAN REALTORS, WHITEHEAD, INC., an Illinois corporation, d/b/a WHITEHEAD REALTORS, PREMIER REAL ESTATE BROKERAGE SERVICES, INC., an Illinois corporation, d/b/a COLDWELL BANKER PREMIER, CENTURY 21 COUNTRY NORTH, INC., an Illinois corporation, d/b/a CENTURY 21 COUNTRY NORTH, R.CROSBY, INCORPORATED, an Illinois corporation, d/b/a PRUDENTIAL CROSBY REALTORS, LORI REAVIS, RAY YOUNG, MICHAEL DUNN, DONNA SHIPLER n/k/a DONNA KITZMAN, MELISSA SMITH, JESSICA LICARY and DIANNE PARVIN., in an amount to exceed $500,000.00, plus the costs of prosecuting this action, as well as any and all further relief as this court deems appropriate.

**PLAINTIFFS DEMAND TRIAL BY JURY**

One of the Attorneys for Plaintiffs

David G. Sigale, Esq. (#6238103)
KONEWKO & ASSOC., LTD.
29W204 Roosevelt Road
West Chicago, IL 60185
(630) 231-5500

25

## <u>VERIFICATION BY CERTIFICATION</u>

Under penalties as provided by law pursuant to Rule 11 of the Federal Rules of Civil

Procedure, the undersigned, Gregory Hackman, individually and as authorized representative of

Gregory Hackman Realtors, Inc., certifies that the statements set forth in this instrument are true

and correct, except as to matters therein stated to be on information and belief and as to such

matters the undersigned certify as aforesaid that thy verily believe the same to be true.


_____
Gregory Hackman, individually and
Authorized representative of
Gregory Hackman Realtors, Inc.


David G. Sigale, Esq. (#6238103)
KONEWKO & ASSOC., LTD.
29W204 Roosevelt Road
West Chicago, IL 60185
(630) 231-5500

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Rule 11 of the Federal Rules of Civil Procedure, the undersigned, Gregory Hackman, individually and as authorized representative of Gregory Hackman Realtors, Inc., certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certify as aforesaid that thy verily believe the same to be true.

Gregory Hackman, individually and
Authorized representative of
Gregory Hackman Realtors, Inc.

David G. Sigale, Esq. (#6238103)
KONEWKO & ASSOC., LTD.
29W204 Roosevelt Road
West Chicago, IL 60185
(630) 231-5500

29