IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREGORY HACKMAN d/b/a GREGORY      )
HACKMAN REALTORS, and GREGORY      )
HACKMAN REALTORS, Inc., an Illinois )
corporation                        )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )
                                   )   No. 06 C 50240
DICKERSON REALTORS, INC., an       )
Illinois corporation d/b/a         )
DICKERSON-NEIMAN REALTORS,         )
WHITEHEAD, INC., an Illinois       )
corporation d/b/a WHITEHEAD        )
REALTORS, R. CROSBY, INCORPORATED, )
an Illinois corporation d/b/a      )
PRUDENTIAL CROSBY REALTORS, McKISKI-)
LEWIS, INC., an Illinois corporation )
d/b/a TOM McKISKI REALTORS, LORI   )
REAVIS, RAY YOUNG, MICHAEL DUNN,   )
JESSICA LICARY, DIANE PARVIN, FRANK )
WEHRSTEIN, FRANK SHELEY, MARY      )
WESTIN, LARRY PETRY, ROCKFORD AREA )
ASSOCIATION OF REALTORS, TERRIE    )
HALL, and ILLINOIS ASSOCIATION OF  )
REALTORS,                          )
                                   )
          Defendants.              )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Gregory Hackman d/b/a Gregory Hackman Realtors and

Gregory Hackman Realtors, Inc. (collectively, "Hackman"), have

filed a second amended complaint seeking to cure the pleading

deficiencies I found in previous versions of the complaint. *See*

*Hackman v. Dickerson Realtors, Inc.*, 520 F.Supp.2d 954 (N.D. Ill.

2007) ("*Hackman I*") and *Hackman v. Dickerson Realtors, Inc.*, 557

F.Supp.2d 938 (N.D. Ill. 2008) ("*Hackman II*"). Several defendants have filed motions to dismiss the newest version of the complaint. I resolve these motions as discussed below.

I.

This opinion assumes general familiarity with the facts set forth in my earlier opinions. Plaintiffs are real estate concerns doing business in the Rockford, Illinois area. Defendants are other local real estate agents and agencies and two professional associations: the Rockford Area Association of Realtors ("RAAR") and the Illinois Association of Realtors ("IAR"). Plaintiffs allege an anticompetitive scheme by defendants to drive plaintiffs out of the local real estate market in retaliation for plaintiffs' offering their clients a lower commission rate than the "going" rate offered by the agent and agency defendants.[1]

Like the previous two complaints, the second amended complaint sets forth six counts: Counts I and II allege, respectively, federal and state antitrust violations against numerous defendants. Count III seeks a temporary injunction against RAAR and IAR to stop an ethics hearing against Hackman. Count IV seeks a permanent injunction against RAAR and IAR concerning the same ethics

_____

[1]Plaintiffs assert that the "going" rate is six or seven percent on pre-existing properties, while plaintiffs offer five percent on such properties. As discussed in my previous opinions, other realtors are affected by Hackman's rate because under the Multiple Listings Service ("MLS") rules, the buyer's and seller's agents typically split equally the commission earned on a sale. *See Hackman I*, at 957.

2

proceedings, as well as a declaration that RAAR and IAR violated their internal procedures in handling these proceedings. Count V alleges defamation by several defendants and is not at issue in the pending motions. Count VI alleges tortious interference with business expectancy and contract.

Now before me are the following motions: defendant Hall's motion to dismiss Counts I, II, and VI; a joint motion by defendants RAAR and IAR to dismiss Counts I-IV and VI[2]; defendant Sheley's motion to dismiss Counts I, II, and VI; defendant Young's motion to dismiss Counts I and II; and defendant Westin's motion to dismiss Counts I, II, and VI.

The standards by which I must judge the sufficiency of the second amended complaint against the challenges raised by these motions is by now familiar: First, I must accept all well-pleaded facts as true. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Second, I must view the allegations in the light most favorable to plaintiffs. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Dismissal of a claim is proper only if plaintiffs have not, at minimum, made enough factual allegations to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007) (citations omitted). Nevertheless, "a well-pleaded complaint may proceed even if it appears 'that a

---

[2]Only Counts III and IV are asserted against IAR.

3

recovery is very remote and unlikely.'" *Id.*, *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974)).

## II. Hall's motion and RAAR/IAR's joint motion

Terrie Hall was President of RAAR at times relevant to this action, and the parties do not dispute that she acted as an agent of RAAR with respect to all conduct attributed to her in the second amended complaint. Accordingly, my discussion below of Counts I, II, and VI, which are asserted against Hall and RAAR, applies to both motions to the extent they seek dismissal of those counts.

### A. Count I

Count I asserts violation of the Sherman Act, 15 U.S.C. §§ 1 & 2. As I held in *Hackman I*, "'A successful claim under Section 1 of the Sherman Act requires proof of three elements: (1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury.'" *Hackman I*, at 963, *quoting Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993)). Hall and RAAR contend that the plaintiffs fail to allege the first of these elements, since the second amended complaint does not assert enough factual material to suggest plausibly that Hall knowingly participated in any illegal agreement. I disagree.

In *Twombly*, the Supreme Court held that to state a claim under § 1 of the Sherman Act, a complaint must set forth "enough factual matter (taken as true) to suggest that an agreement was made."

*Twombly*, 127 S.Ct. at 1966. In *Hackman II*, I dismissed plaintiffs' claim under § 1 of the Sherman Act because the allegations in the first amended complaint:

> fail to allege facts from which it could be inferred that RAAR reached an anticompetitive agreement with the other defendants. That is, I do not find, based on the allegations, that any agent acting on behalf or RAAR is alleged to have 'had a conscious commitment to a common scheme designed to achieve an unlawful objective' as required under *Monsanto v. Spray-Rite Service Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984).

*Hackman II*, at 946. The second amended complaint, however, has overcome this defect. In particular, plaintiffs' allegations in ¶¶ 43 and 45 of their newest complaint assert that Hall had knowledge of the boycott pursued by the agency defendants, and that she engaged conduct that reasonably can be interpreted as furthering the alleged anticompetitive agreement. In ¶ 43, plaintiffs allege that Hall was present for, and participated in, a late-2004 conversation at a broker's meeting hosted by RAAR, in which the agency defendants allegedly agreed not to do business with Hackman because of his lower commission rate.[3] In ¶ 45, plaintiffs refer to a November 18, 2005 conversation between Hall and a Vice President of IAR, in which Hall and the IAR Vice

---

[3]Plaintiffs allege in ¶ 26 that Hall was also present for a similar conversation in late 1999, but these allegations are less specific.

President allegedly conspired to influence negatively the outcome of actions pending against plaintiffs.[4]

These allegations belie Hall's argument that the second amended complaint does not allege sufficient facts from which to infer that Hall was aware of, or agreed to, an illegal agreement. Hall's characterization of these allegations as "conclusory" and "contradictory" are unpersuasive. The allegations identify specific conversations that took place on specific (or reasonably specific) dates between Hall and one or more co-defendants. They also allege the general substance of these conversations, which, if presumed true, plausibly supports an inference of Hall's agreement with an anticompetitive scheme.

The fundamental defect of plaintiffs' earlier allegations against Hall and RAAR was that they did not allege, or even suggest, that Hall was aware of the agency boycott, so her conduct could not reasonably be construed as being in furtherance of that boycott. *See Hackman II*, at 946. The present complaint overcomes this defect, and it casts the remaining allegations against Hall in a new light.

Hall's argument that plaintiffs' allegations "do not plausibly exclude the possibility of independent action" is unavailing

---

[4]I understand from the allegations as a whole that these actions are related to the alleged illegal boycott, and that RAAR exercised some adjudicatory function with respect to these actions.

because turns the applicable standard on its head. Plaintiffs are not required, at the pleading stage, to exclude every plausible interpretation of the facts that does not support their theory of liability. On the contrary, they need only assert "plausible grounds to infer" that an illegal agreement was made to state a claim based on § 1 of the Sherman Act. *Twombly*, at 1965. The second amended complaint achieves this. Plaintiffs have now sufficiently pleaded that Hall "had a conscious commitment to a common scheme" to coerce plaintiffs, using anticompetitive tactics, into raising their commission rates.

Plaintiffs' claim under § 2 of the Sherman Act is another story. Section 2 of the Sherman Act provides that it is unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize" interstate trade. 15 U.S.C.A. § 2. In *Hackman II*, I observed that "nowhere do plaintiffs allege that Dickerson (or any other defendant) exercised, attempted to exercise, or conspired to exercise monopoly power. The interpretation that the amended complaint asserts a Sherman Section 2 claim is based on a particularly generous reading of plaintiffs' allegations." *Hackman II*, at 947, n. 8. Nevertheless, I analyzed plaintiffs' claim against Hall and RAAR as alleging their participation in a conspiracy to monopolize, and I will do so again here.

To prove that Hall and RAAR conspired to monopolize, plaintiffs must show: "1) the existence of a combination or conspiracy, 2) overt acts in furtherance of the conspiracy, 3) an effect upon a substantial amount of interstate commerce and 4) the existence of specific intent to monopolize." *Hackman I*, at 964 (*quoting Great Escape, Inc. v. Union City Body* Co., Inc., 791 F.2d 532, 540-41 (7th Cir. 1986)). In *Hackman II*, I dismissed plaintiffs' Sherman § 2 claim against Hall and RAAR because the first amended complaint did not allege "sufficient facts from which to infer that...Hall, or RAAR had an 'intent and purpose' to exercise monopoly power."[5] *Hackman II*, 557 F.Supp.2d, at 947 (*quoting American Tobacco Co. v. United States*, 328 U.S. 781, 809, 66 S.Ct. 1125 (1946)). The same can be said of the second amended complaint.

The second amended complaint alleges--as did the previous complaints--that Dickerson (one of the agency defendants) "controls nearly 50% of the listings in the relevant area," and that Hall advised a Dickerson agent to send Hackman an allegedly anticompetitive letter. Even construing these allegations as asserting that Hall formed an anticompetitive agreement with a

---

[5]In *Hackman I*, I dismissed this claim against RAAR (it was not then asserted against Hall) on the ground that the original complaint failed to allege that RAAR "agreed or conspired with other defendants to monopolize the market, only that other defendants used their position in RAAR to obtain a monopoly." *Hackman I,* 520 F.Supp.2d, at 965.

dominant market player, they fall short of alleging that any of the defendants had a specific intent to monopolize as required by § 2. *See U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 846 at n. 59 (1940) (price-fixing agreements that violate § 1 may or may not amount to unlawful monopolies under § 2, since a § 2 violation requires proof of "an intent and a power" to monopolize, in addition to the existence of a "contract, combination or conspiracy" in violation of § 1).

In any event, plaintiffs' § 2 claim against Hall and RAAR suffers from an additional flaw: neither Hall nor RAAR was a competitor in the Rockford area real estate market. Hall argues that a defendant cannot be found liable for conspiracy to monopolize a market in which it does not compete, citing several cases for this proposition:[6] *Aquatherm Industries, Inc., v. Florida Power & Light Co.*, 145 F.3d 1258, 1262 n. 4 (11th Cir. 1992) ("no authority exists holding a defendant can conspire to monopolize a market in which it does not compete"); *Goodloe v. Nat'l Wholesale Co., Inc.*, No. 03 C 7176, 2004 WL 1631728, at *6 (N.D. Ill., July 19, 2004)(*citing Aquatherm*); and *Spanish Broadcasting Systems, Inc., v. Clear Channel Communications, Inc.*, 242 F.Supp.2d 1350, 1364 (S.D. Fla. 2003)(same). Plaintiffs do not respond to this argument. Indeed, the entirety of their opposition

---

[6]Oddly, RAAR does not raise this argument, but I find it applicable to RAAR nevertheless.

to Hall's and RAAR's motions as to Count I focuses on their Sherman § 1 claim.

For the foregoing reasons, I grant Hall's and RAAR's motions to dismiss Count I to the extent that count asserts a violation of § 2 of the Sherman Act and otherwise deny the motions as to that count. Plaintiffs' claim under § 2 of the Sherman Act is dismissed with prejudice.

## B. Count II

My analysis of Count II against Hall and RAAR largely parallels my analysis of Count I. Count II of the amended complaint asserts violations of the Illinois Antitrust Act (the "Illinois Act") 740 ILCS § 10/3, by Hall, RAAR, and other defendants. The Illinois Act provides, "when the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this act." 740 ILCS § 11. Plaintiffs allege that Hall and RAAR (among others) violated Sections 3(1)(a), 3(2), and 3(3) of the Illinois Act. Section 3(2) is clearly similar to § 1 of the Sherman Act, while Section 3(3) is similar to § 2 of the federal statute.[7] Accordingly, I find that

---

[7]The Illinois Act provides:

§ 3. Every person shall be deemed to have committed a violation of this Act who shall:

(1) Make any contract with, or engage in any combination or conspiracy with, any other person who is, or but for a prior

plaintiffs have stated a claim against Hall and RAAR under § 3(2)
of the Illinois Act,[8] but not under § 3(3).

Section 3(1)(a) does not clearly parallel either § 1 or § 2 of
the Sherman Act. On its face, this subsection prohibits agreements
*between competitors* (neither provision of the Sherman Act contains
this language). *See People ex rel. Scott v. Convenient Food Mart,
Inc.*, 21 Ill.App.3d 97, 315 N.E.2d 124 (Ill.App.Ct. 1974) ("The
purpose of [Section 3(1)(a)] is to prevent Competitors from joining
forces to fix prices.") Plaintiffs do not allege, however, that
either Hall or RAAR is a competitor of Hackman.

For the foregoing reasons, Hall's and RAAR's motions are
granted to the extent they seek dismissal of plaintiffs' claims

---

agreement would be, a competitor of such person:

a. for the purpose or with the effect of fixing, controlling,
or maintaining the price or rate charged for any commodity
sold or bought by the parties thereto, or the fee charged or
paid for any service performed or received by the parties
thereto;

...

(2) By contract, combination, or conspiracy with one or more
other persons unreasonably restrain trade or commerce; or

(3) Establish, maintain, use, or attempt to acquire monopoly
power over any substantial part of trade or commerce of this
State for the purpose of excluding competition or of
controlling, fixing, or maintaining prices in such trade or
commerce.

[8]I previously rejected RAAR's argument that it is not subject
to liability under Section 3(2) of the Illinois Act based on its
non-profit status, *Hackman I*, at 966, and I reject it again here.

under Sections 3(1)(a) and 3(3) of the Illinois Act. Those claims are dismissed with prejudice. Count II survives against Hall and RAAR only to the extent it asserts a violation of Section 3(2) of the Illinois Act.

### C. Counts III and IV (against RAAR and IAR)

In these counts, plaintiffs seek temporary and permanent injunctive relief against RAAR and IAR to prevent them from adjudicating one or more (it is not clear) ethics complaints allegedly pending against Hackman. Plaintiffs also seek a declaratory judgment that the manner in which RAAR and IAR have handled ethics complaints against Hackman violates these organizations' internal standards set forth in the Code of Ethics and Arbitration Manual of the National Association of Realtors (the "Manual").

I have twice dismissed these claims for lack of subject matter jurisdiction on the ground that plaintiffs did not sufficiently plead any connection between the alleged anticompetitive agreement and RAAR's or IAR's alleged mishandling of ethics complaints against Hackman. The second amended complaint, even read in the light most favorable to plaintiffs, does not overcome this defect as to IAR.

Plaintiffs allege that IAR improperly assumed jurisdiction of an ethics complaint filed against Hackman, and that IAR "is planning to schedule an ethics hearing at an unknown future date."

Plaintiffs do not allege, however, that IAR was aware of, agreed with, supported, or encouraged any of the conduct giving rise to plaintiffs' federal claims. Notably, IAR is absent from plaintiffs' antitrust claims. Although the second amended complaint asserts that *Hall* was aware of the anticompetitive agreement when she allegedly discussed "fixing" the outcome of actions against plaintiffs with an IAR vice president, there are no factual allegations to suggest that *IAR* was a knowing participant in the alleged scheme. It is true that ¶ 45 of the amended complaint states that Hall "conspired" with IAR's vice president; but that term is without any substantive content as to IAR. For these reasons, I conclude for a third time that I lack jurisdiction to hear plaintiffs' claims against IAR.

Counts III and IV against RAAR fail for other reasons. To begin with, plaintiffs plead themselves out of injunctive relief against RAAR with the allegation that IAR, not RAAR, now has (and has had since August 1, 2006) jurisdiction over the ethics proceedings allegedly pending against Hackman. Any action to prevent *RAAR* from adjudicating those proceedings is moot.

Plaintiffs' claim for declaratory relief also fails because plaintiffs have not alleged any actual controversy with RAAR. *See SBL Associates v. Village of Elk Grove*, 247 Ill.App.3d 25, 617 N.E.2d 178 (Ill.App.Ct. 1993)("actual controversy" required for

claim under state Declaratory Judgment Act)[9]. Plaintiffs'
objection to RAAR's transfer of the ethics proceedings to IAR is
that an adverse finding by IAR could "potentially" subject Hackman
to statewide, rather than merely local, censure. But a declaratory
judgment is not appropriate as a means of avoiding "anticipated
future difficulties." *Weber v. St. Paul Fire & Marine Ins. Co.*,
251 Ill.App.3d 371, 374 622 N.E.2d 66 (Ill.App.Ct. 1993); *see also*
*Wisconsin Central, Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir.
2008) (claim for declaratory relief requires "sufficient immediacy
and reality").

Although plaintiffs dispute the propriety, under the Manual,
of RAAR's transfer of the ethics proceedings, they allege no
present violation of any legally cognizable interest based on the
transfer.[10] Moreover, the only injury plaintiffs allege is entirely
speculative: that they could "potentially" be subject to an adverse

_____

[9]Plaintiffs cite only state authority in support of their
claim for declaratory judgment. Regardless of whether state or
federal law governs this claim, "a case of actual controversy" is
required by the Constitution. *See Wisconsin Central, Ltd. V.*
*Shannon* 539 F.3d 751, 759 (7th Cir. 2008) (ability to seek
preemptive relief under Declaratory Judgment Act, 28 U.S.C. § 2201,
does not vitiate constitutional requirement).

[10]I note in passing that plaintiffs do not allege that the
Manual creates any individual rights at all, or that it provides an
individual right of judicial action to enforce its provisions. In
fact, there appears to be merit to RAAR and IAR's claim that
plaintiffs waived their right to judicial recourse for alleged non-
compliance with the Manual, absent a claim that wilful or wanton
conduct by RAAR or IAR resulted in a violation of some legally
cognizable interest.

ruling by IAR at some point in the future. Furthermore, as noted above, there is no factual basis in the second amended complaint to suggest that an adverse ruling by IAR would be unfair to plaintiffs, since they do not assert that IAR participated in, or even knew about, the alleged anticompetitive scheme against Hackman. Finally, even assuming that a hypothetical adverse ruling by IAR would be unfair to Hackman in a way that violates some legally cognizable interest, any injury to plaintiffs would be attributable to IAR, not to RAAR.

For the foregoing reasons, I grant RAAR and IAR's motions to dismiss Counts III and IV.

### D. Count VI

In Count VI, plaintiffs allege tortious interference with business expectancy and tortious interference with contract. In *Hackman II*, I dismissed Count VI against Hall and RAAR on the ground that the misconduct attributed to them lacked "a sufficient causal link with the injury claimed." *Hackman II*, 557 F.Supp.2d., at 951. Plaintiffs have overcome this defect.

Plaintiffs assert that Hall advised certain Hackman clients to file a complaint with the Office of Banks and Real Estate ("OBRE") in order to force Hackman to release them from their contract. According to the second amended complaint, Hall knew that Hackman had not engaged in wrongful conduct but advised Hackman's clients that because the cost of defending a complaint would exceed the

15

commission he would earn on the sale of their property, Hackman would release them from their contract if they filed a complaint. Plaintiffs further allege that a complaint was filed, and that Hackman released the clients as a result.

The foregoing allegations are sufficient to state a claim for tortious interference with contract. While it is true that plaintiffs do not expressly allege that Hackman's clients breached their contract, a reasonable interpretation of the claim is that the clients breached their duty of good faith and fair dealing by filing an OBRE complaint they knew to be groundless as a means of strong-arming Hackman into releasing them from their contractual obligations.[11]

Hall asserts that professional privilege immunizes her from liability for this claim. She argues that privilege exists if the defendant acted in good faith to protect an interest or uphold a duty. Because the clear implication of plaintiffs' allegations is that Hall was not acting in good faith, I reject this argument.

For the foregoing reasons, Hall's and RAAR's motions to dismiss Count VI are denied.

---

[11]Because I find these allegations sufficient to state plaintiffs' claim against Hall and RAAR, I need not address whether any of the other allegations against them also supports their claim.

### III. Sheley's Motion

At times relevant to this action, Frank Sheley was a real estate agent employed by defendant Dickerson. In *Hackman II*, I granted Sheley's motion to dismiss Counts I, II, and VI. Plaintiffs reassert these counts in their second amended complaint, and Sheley again moves to dismiss. His motion is granted.

### A. Counts I and II

Plaintiffs claims against Sheley revolve around one particular transaction. Plaintiffs claim that after Sheley's clients declined an offer by Hackman's clients, Hackman had to insist before Sheley would present a counteroffer. Plaintiffs also allege that Sheley advised his own clients not to accept Hackman's offer because "Hackman's deals never close." The transaction was nevertheless consummated.

In *Hackman II*, I held that the factual matter set forth in the first amended complaint did not establish a reasonable likelihood that Sheley reached an anticompetitive agreement with any other defendant. *Hackman II*, 557 F.Supp.2d at 953. The second amended complaint still fails in this respect. The only novelty of the latest complaint, insofar as concerns plaintiffs' antitrust claims against Sheley, is that plaintiffs now state that Sheley "presumably received" a directive from defendant Dickerson not to do business with plaintiffs. This new allegation does not alter my earlier analysis.

Even assuming that the new allegation of Sheley's presumed receipt of this "directive" is sufficient to plead that Sheley knew about the anticompetitive agreement, the absence of such allegations in the first amended complaint was only part of the problem I identified in *Hackman II*. Equally important was the fact that "the very facts pled--that a transaction was completed between Hackman's and Sheley's clients--suggest that Sheley had not agreed to refuse to deal with Hackman." *Id.* Plaintiffs have not overcome this defect.

Plaintiffs argue that the allegations against Sheley are substantially identical to the allegations against defendant Licary, which I held sufficient in *Hackman II*. As I noted in that opinion, the sufficiency of plaintiffs' antitrust claims against Licary was "a closer call" than similar claims against Licary's employer. Nevertheless, I found that plaintiffs had pled sufficient factual material from which to infer Licary's agreement with and participation in the agency boycott. In particular, plaintiffs alleged that Licary was aware of the "vendetta" against Hackman, and that she had "caused" another real estate agent to cancel a deal with Hackman by telling the other agent that Hackman was dishonest and maligning his business integrity. Although both Sheley and Licary are alleged to have defamed Hackman, only Licary is alleged to have defamed Hackman to *another realtor*, who then declined to do business with Hackman. This allegation supports a

claim of concerted action in a way that the allegations against Sheley do not.

For the foregoing reasons, Sheley's motion to dismiss Counts I and II is granted. These counts against him are dismissed with prejudice.

## B. Count VI

In *Hackman II*, I held that Count VI against Sheley was "patently untenable" in several respects. *Hackman II*, at 953. The only argument plaintiffs now raise in opposition to Sheley's motion is that because their latest allegations suffice to support antitrust claims against Sheley, they also support plaintiffs' tortious interference claim. Having rejected, above, the premise of plaintiffs' argument, I need not linger on its merits. Sheley's motion to dismiss Count VI is granted. Count VI against Sheley is dismissed with prejudice.

## IV. Young's Motion

At times relevant to this action, Ray Young was a real estate agent employed by defendant Dickerson. Young moves to dismiss Counts I and II.

Plaintiffs' allegations against Young are similar to those against Sheley. In particular, plaintiffs allege that Young defamed Hackman to one of Hackman's clients, who then left Hackman and became Young's client. Plaintiffs further allege that Young, like Sheley, "presumably received" the directive from defendant

Dickerson not to do business with Hackman.  Plaintiffs do not

allege that Young declined to do business with Hackman.  Instead,

plaintiffs again rely on a comparison to their allegations against

Licary.  This comparison fails for the same reasons discussed above

in relation to Sheley's motion.   Young's motion is granted, and

Counts I and II against him are dismissed with prejudice.

## V. Westin's Motion

At all relevant times, Mary Westin was a real estate agent and

manager of defendant Dickerson.  Plaintiffs allege that she said to

a Hackman agent, "you seem to be a smart guy, why are you working

for Hackman?" and made other unspecified derogatory remarks about

Hackman.   Plaintiffs further allege that the Hackman agent in

question later quit Hackman's employ.   Westin moves to dismiss

Counts I, II and VI against her.

The only new element of plaintiffs' allegations against Westin

is that she, like Sheley and Young, "presumably received" the

directive not to do business with Hackman.   The second amended

complaint does not allege that Westin declined to do business with

Hackman.  Counts I and II against Westin fail for the same reasons

they fail against Sheley and Young.

Count VI also fails for the very reasons I articulated in

*Hackman II*:

> The allegations of the amended complaint directed to Westin
> are also insufficient to state a claim for tortious
> interference with contract. As defendant Westin correctly
> argues, to state a claim adequately, plaintiffs must allege

not only that Westin interfered with an existing contract, but that she committed some impropriety in doing so. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 485, 230 Ill.Dec. 229, 693 N.E.2d 358 (1998). I find that plaintiffs' allegations fail to meet this requirement.

Plaintiffs' allegations can reasonably read to allege two types of wrongful conduct on Westin's part. The first relates to the antitrust allegations directed to Westin. Because those claims fail to plead that Westin participated in an anticompetitive scheme, they also do not support an inference of impropriety. Plaintiffs also allege that Westin made "false and derogatory statements" about Hackman. Although a reasonable interpretation of these allegations is that they support a defamation claim, plaintiffs notably do not include Westin in Count V for defamation. The remainder of plaintiffs' allegations of wrongful conduct by Westin, such as the attribution of an improper motive for her statements to Hackman's agent, are simply too speculative and conclusory to support their claim.

*Hackman II*, at 954.

For the foregoing reasons, Westin's motion is granted. Counts I, II, and VI against her are dismissed with prejudice.

VI.

To summarize the disposition of the motions discussed above:

Hall's motion is granted in part and denied in part. Count I is now limited to plaintiffs' claim under § 1 of the Sherman Act, while their claim under § 2 of the Sherman Act is dismissed with prejudice. Count II is limited to plaintiffs' claim under Section 3(2) of the Illinois Antitrust Act, while their claims under Sections 3(1)(a) and 3(3) are dismissed with prejudice. Count VI survives.

21

RAAR and IAR's joint motion is granted in part and denied in part. Count I against RAAR is now limited to plaintiffs' claim under § 1 of the Sherman Act, while their claim under § 2 of the Sherman Act is dismissed with prejudice. Count II against RAAR is limited to plaintiffs' claim under Section 3(2) of the Illinois Antitrust Act, while their claims under Sections 3(1)(a) and 3(3) are dismissed with prejudice. Counts III and IV are dismissed.

Sheley's motion is granted. Counts I, II and VI are dismissed with prejudice.

Young's motion is granted. Counts I and II are dismissed with prejudice.

Westin's motion is granted. Counts I, II and VI are dismissed with prejudice.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: January_23, 2009